**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

MARCH FOR LIFE, *et al.*,

               Plaintiffs,

      v.

SYLVIA M. BURWELL, in her official
    capacity as Secretary of the
    Department of Health and Human
    Services, *et al.*,

              Defendants.

No. 14-cv-1149-RJL

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 3

    I.    PLAINTIFFS LACK STANDING ............................................................... 3

    II.   EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS FAIL TO STATE A
          CLAIM UPON WHICH RELIEF MAY BE GRANTED ............................... 9

       A. March for Life's Equal Protection Claim Fails ......................................... 9

       B. The Employee Plaintiffs' RFRA Claim Fails .......................................... 14

       C. The Employee Plaintiffs' Free Exercise Claim Fails .............................. 18

       D. Plaintiffs' Administrative Procedure Act Claims Fail ............................ 21

CONCLUSION ................................................................................................................. 25

## TABLE OF AUTHORITIES

**CASES**                                                                            **PAGE(S)**

*Annex Med., Inc. v. Burwell,*

    -- F.3d --, 2014 WL 4959142 (8th Cir. 2014) ............................................................... 1, 4, 5

*Ass'n of Data Processing Serv. Orgs., Inc. v. Camp,*

    397 U.S. 150 (1970) ...................................................................................................... 24

*Bhd. of R.R. Signalmen v. Surface Transp. Bd.,*

    638 F.3d 807 (D.C. Cir. 2011) ..................................................................................... 25

*Burwell v. Hobby Lobby Stores, Inc.,*

    134 S. Ct. 2751 (2014) ..................................................................................... 12, 18, 19

*Catholic Benefits Ass'n v. Sebelius,*

    -- F. Supp. 2d --, 2014 WL 2522357 (W.D. Okla. 2014) .................................................. 5

*Chaplaincy of Full Gospel Churches v. England,*

    454 F.3d 290 (D.C. Cir. 2006) ....................................................................................... 3

*Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.,*

    467 U.S. 837 (1984) ...................................................................................................... 20

*Clinton v. City of New York,*

    524 U.S. 417 (1998) ........................................................................................................ 5

*Combs v. Homer-Center Sch. Dist.,*

    540 F.3d 231 (3d Cir. 2008) ......................................................................................... 15

*\* Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter-day*

    *Saints v. Amos*, 483 U.S. 327 (1987) ...................................................................... *passim*

*Ctr. for Inquiry, Inc. v. Marion Circuit Court Clerk,*

    758 F.3d 869 (7th Cir. 2014) ................................................................................... 13, 14

*Cutter v. Wilkinson,*

    544 U.S. 709 (2005) ...................................................................................................... 12

*Dole v. Shenandoah Baptist Church*,

    899 F.2d 1389 (4th Cir. 1990) ........................................................................10

*FCC v. Beach Commc'ns, Inc.*,

    508 U.S. 307 (1993)...........................................................................................11, 12

*Fed. Energy Admin. v. Algonquin SNG, Inc.*,

    426 U.S. 548 (1976)...........................................................................................25

*Forest Grove School Dist. v. T.A.*,

    557 U.S. 230 (2009)...........................................................................................25

*Gilardi v. U.S. Dep't of Health & Human Servs.*,

    733 F.3d 1208 (D.C. Cir. 2013), *vacated*, 134 S. Ct. 2902 (2014)...................19

*Goehring v. Brophy*,

    94 F.3d 1294 (9th Cir. 1996) ...........................................................................2, 17

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,

    546 U.S. 418 (2006)...........................................................................................16

*Gordon v. Holder*,

    721 F.3d 638 (D.C. Cir. 2013) .........................................................................12, 13

*Greene v. Dalton*,

    164 F.3d 671 (D.C. Cir. 1999) .........................................................................7

*Hamilton v. Schriro*,

    74 F.3d 1545 (8th Cir. 1996) ...........................................................................15

*Heckler v. Matthews*,

    465 U.S. 728 (1984)...........................................................................................10

*Heller v. Doe*,

    509 U.S. 312 (1993)...........................................................................................11

*Henderson v. Kennedy*,

    253 F.3d 12 (D.C. Cir. 2001).............................................................................14

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,

    132 S. Ct. 694 (2012) ....................................................................................................12

*Hsu v. Roslyn Union Free Sch. Dist. No. 3*,

    85 F.3d 839 (2d Cir. 1996) ...........................................................................................10

*Kaemmerling v. Lappin*,

    553 F.3d 669 (D.C. Cir. 2008) ......................................................................................15

*Klamath Water Users Ass'n v. FERC*,

    534 F.3d 735 (D.C. Cir. 2008) ........................................................................................6

*Korte v. Sebelius*,

    735 F.3d 654 (7th Cir. 2013) ........................................................................................12

*Lepelletier v. FDIC*,

    164 F.3d 37 (D.C. Cir. 1999) ..........................................................................................5

*Levin v. Commerce Energy, Inc.*,

    560 U.S. 413 (2010) ......................................................................................................10

\* *Lujan v. Defenders of Wildlife*,

    504 U.S. 555 (1992) ................................................................................................ *passim*

*Lurie v. Mid-Atl. Permanente Med. Grp.*,

    729 F. Supp. 2d 304 (D.D.C. 2010) ...............................................................................7

*Lynch v. Donnelly*,

    465 U.S. 668 (1984) ......................................................................................................12

*Mahoney v. Doe*,

    642 F.3d 1112 (D.C. Cir. 2011) ....................................................................................15

*Marsh v. Or. Natural Res. Council*,

    490 U.S. 360 (1989) ......................................................................................................20

\* *Mich. Catholic Conf. v. Burwell*,

    755 F.3d 372 (6th Cir. 2014) .................................................................................. *passim*

*Mississippi v. EPA*,

    744 F.3d 1334 (D.C. Cir. 2013) ......................................................................21

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,

    463 U.S. 29 (1983) ...............................................................................22, 24

*Nat'l Shooting Sports Found. v. Jones*,

    716 F.3d 200 (D.C. Cir. 2013) ..................................................................23, 24

*Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*,

    366 F.3d 930 (D.C. Cir. 2004) .............................................................3, 5, 8, 9

*Nuvio Corp. v. FCC*,

    473 F.3d 302 (D.C. Cir. 2006) .....................................................................22

*Priests for Life v. U.S. Dep't of Health & Human Servs.*,

    -- F Supp. 2d --, 2013 WL 6672400 (D.D.C. 2013) ...............................11, 18, 19

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,

    489 F.3d 1267 (D.C. Cir. 2007) .....................................................................5

*Roman Catholic Archbishop of Wash. v. Sebelius*,

    -- F. Supp. 2d --, 2013 WL 6729515 (D.D.C. 2013) ......................................18

*SEC v. Chenery Corp.*,

    332 U.S. 194 (1947) ..................................................................................23

*Spectrum Five LLC v. FCC*,

    758 F.3d 254 (D.C. Cir. 2014) .......................................................................6

*Templeton v. Comm'r*,

    719 F.2d 1408 (7th Cir. 1983) .....................................................................11

*United States v. Carlo Bianchi & Co.*,

    373 U.S. 709 (1963) ..................................................................................21

* *United States v. Lee*,

    455 U.S. 252 (1982) ...........................................................................2, 16, 17

*Univ. of Notre Dame v. Sebelius*,

    743 F.3d 547 (7th Cir. 2014) ........................................................................12

*Utah v. Evans*,

    536 U.S. 452 (2002) ..........................................................................................6

*Vance v. Bradley*,

    440 U.S. 93 (1979) ...........................................................................................12

*Walz v. Tax Comm'n*,

    397 U.S. 664 (1970) .........................................................................................12

* *Wieland v. U.S. Dep't of Health & Human Servs.*,

    978 F. Supp. 2d 1008 (E.D. Mo. 2013) .......................................................1, 5

*WorldCom, Inc. v. FCC*,

    238 F.3d 449 (D.C. Cir. 2001) ...................................................................2, 22

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. I .......................................................................................12

## STATUTES

5 U.S.C. § 706 ................................................................................................22

42 U.S.C. § 300a-7 .........................................................................................24

42 U.S.C. § 300gg-13 ...................................................................................8, 15

42 U.S.C. § 18011 ...........................................................................................16

42 U.S.C. § 18023 ...........................................................................................24

## RULES AND REGULATIONS

45 C.F.R. § 145.50 ..........................................................................................17

45 C.F.R. § 147.131 .........................................................................................17

45 C.F.R. § 147.140 .........................................................................................16

76 Fed. Reg. 46,621 (Aug. 3, 2011) ..........................................................11, 10

78 Fed. Reg. 39,869 (July 2, 2013) ................................................... *passim*

**LEGISLATIVE MATERIAL**

148 Cong. Rec. H6566.................................................................................................25

**FEDERAL RULES**

Fed. R. Civ. P. 56 ......................................................................................................7

Fed. R. Evid. 801 ......................................................................................................7

Fed. R. Evid. 802 ......................................................................................................7

**MISCELLANEOUS**

Gina M. Secura et al., *Provision of No-Cost, Long-Acting Contraception and*

*Teenage Pregnancy*, 371 New Eng. J. Med. 1316 (2014) ...............................21

Kaiser Family Foundation and Health Research & Educational Trust, Employer Health

Benefits 2013 Annual Survey .........................................................................17

Sue Ricketts, Greta Klingler, & Renee Schwalberg, *Game Change in Colorado:*

*Widespread Use of Long-Acting Reversible Contraceptives and Rapid*

*Decline in Births Among Young, Low-Income Women*, 46 Persp. on Sexual &

Reprod. Health (Sept. 2014)............................................................................21

**INTRODUCTION**

Plaintiffs have failed to establish that this Court has jurisdiction over their claims. In order to demonstrate that their alleged injuries are redressable at this stage of the litigation, plaintiffs must prove—rather than merely allege—that an insurer would sell them policies consistent with their beliefs if the contraceptive coverage requirement is enjoined. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *see* Defs.' Mot. at 22-28, ECF No. 16. Defendants have suggested that plaintiffs might do so by simply submitting an appropriate declaration from an insurer. *Id.* at 28 n.19 (employee plaintiffs); *see id.* at 26 n.25 (plaintiff March for Life). This is not a "hyper-verification[]," Pls.' Opp'n at 10, ECF No. 18; it is "the manner and degree of evidence required" given that defendants have moved for summary judgment and plaintiffs have moved for final judgment, *Lujan*, 504 U.S. at 561. That plaintiffs have not put forward any such evidence is telling, and confirms that they have not demonstrated their standing. Consequently, this Court—like the only two courts to have confronted similar situations in hearing challenges to the contraceptive coverage requirement—cannot exercise jurisdiction over plaintiffs' claims. *Id.*[1]

In any event, plaintiffs' claims fail on the merits. With regard to March for Life's equal protection claim, defendants made clear throughout the rulemaking that they calibrated the scope of the contraceptive coverage requirement's exemption for religious employers in order "to respect the religious interests of houses of worship and their integrated auxiliaries in a way that does not undermine the government['s] interests." 78 Fed. Reg. at 39,874, AR at 6. Plaintiffs' insistence that the exemption serves some other purpose, relating to whether certain employees are likely to use contraceptives, is unavailing. Instead, "lifting a regulation" that might "burden[] the exercise of religion" by religious institutions was the Departments' aim, and under binding precedent, it is "proper" and "permissible." *Corp. of the Presiding Bishop of the Church of Jesus*

---

[1] *See Annex Med., Inc. v. Burwell*, -- F.3d --, 2014 WL 4959142, at *2-3 (8th Cir. 2014); *Wieland v. U.S. Dep't of Health & Human Servs.*, 978 F. Supp. 2d 1008, 1014-16 (E.D. Mo. 2013).

*Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 338-39 (1987). "To dispose of [plaintiffs']
equal protection argument, it [would] suffice[] to hold"—as the Supreme Court has instructed in
*Amos*—that the religious employer exemption "is rationally related to the legitimate purpose of
alleviating . . . governmental interference with the ability of religious organizations to define and
carry out their religious missions." *Id.* at 339; *cf. id.* at 338 ("Where . . . government acts with the
proper purpose of lifting a regulation that" might "burden[] the exercise of religion, we see no
reason to require that the exemption comes packaged with benefits to secular entities.").

Plaintiffs' Administrative Procedure Act claims fare no better. Plaintiffs turn the arbitrary
and capricious standard, which is highly deferential and presumes that agency action is valid, on
its head. Instead of acknowledging the deference owed to defendants' reasonable line-drawing,
*WorldCom, Inc. v. FCC*, 238 F.3d 449, 462 (D.C. Cir. 2001), plaintiffs demand that this Court
scrutinize the contraceptive coverage requirement as applied to every individual employer in the
country. This is inconsistent with the standard of review prescribed by the APA.

Nor can the claims brought by the employee plaintiffs alone succeed. The Religious
Freedom Restoration Act subjects to its compelling interest test only those laws that substantially
burden a claimant's religious exercise, and the contraceptive coverage requirement—which does
not even apply to the employee plaintiffs—does not burden their religion by requiring their
health insurance policy to cover services that they will not use. More importantly, the employee
plaintiffs have all but conceded that exempting them would undermine the government's
compelling interest in a workable insurance system. The relief the employee plaintiffs seek is no
different than that sought by the plaintiffs in *United States v. Lee*, 455 U.S. 252 (1982), and
*Goehring v. Brophy*, 94 F.3d 1294 (9th Cir. 1996), where the courts had no difficulty concluding
that the challenged laws survived strict scrutiny.

Finally, nearly every court to have considered a Free Exercise challenge like that brought
by the employee plaintiffs has rejected it at the outset because contraceptive coverage
requirement is neutral and generally applicable. And even if strict scrutiny were applicable, the
employee plaintiffs still would not succeed because the requirement serves the government's

interests in public health and gender equality—interests that are widely recognized as compelling.

Defendants respectfully request that this Court grant their motion to dismiss or, in the alternative, for summary judgment.[2]

## **ARGUMENT**

### I.    **PLAINTIFFS LACK STANDING**

Here, because "[t]he existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the [C]ourt[]," it is "[plaintiffs'] burden . . . to adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury." *Lujan*, 504 U.S. at 562 (quotations and citations omitted). Under these circumstances, "standing is not precluded, but it is ordinarily substantially more difficult to establish." *Id.* (quotation omitted); *see Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 936-42 (D.C. Cir. 2004).

As the Eighth Circuit stated in *Annex Medical*, using terms that are applicable here, "it is unclear whether [plaintiffs'] alleged injury"—plaintiffs' inability to purchase health insurance that accords with plaintiffs' beliefs—is "(1) caused by the government defendants as opposed to the independent decisions of third-party insurers, and (2) redressable by the remedy" plaintiffs seek: an injunction that would prevent defendants from enforcing the requirement against

---

[2] With regard to plaintiffs' motion for preliminary injunction, defendants have shown that because plaintiffs seek to alter the status quo, the standard is even higher than it otherwise would be. Defs.' Mot. at 10, 43. Defendants also argued that plaintiffs cannot demonstrate irreparable harm where their delay in bringing suit is so substantial. *Id.* at 43. Plaintiffs have not addressed these arguments, and they remain "silent when it comes to describing the present or impending emergency circumstances that they face." *Id.* Plaintiffs' motion for preliminary injunction should be denied for these reasons alone. *See, e.g.*, *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("failure to show . . . irreparable harm is . . . grounds for refusing to issue a preliminary injunction"). But because plaintiffs have also requested that the Court consolidate the preliminary injunction and merits stages of this case and enter final judgment in their favor, Pls.' Mot. at 22, ECF No. 11, and because defendants have moved to dismiss, or in the alternative for summary judgment on, all of plaintiffs' claims, Defs.' Mot. at 2, defendants proceed to address why plaintiffs cannot succeed no matter the stage of the litigation.

plaintiffs and their insurer, but that could not force their insurer to sell plaintiffs any particular policy. 2014 WL 4959142, at *2. Plaintiffs have not contested that "their health insurance plan currently offers coverage for the contraceptives to which they object," and that their plan has done so since before the contraceptive coverage requirement came into effect. Defs.' Mot. at 10 & n.7. Plaintiffs' "standing problem," therefore, is that the evidentiary "record contain[s] no" adequate "indication [that] any . . . health insurer is willing, but for the [contraceptive coverage requirement], to sell a plan allowing a small employer such as [March for Life] to prohibit coverage for a handful of healthcare products and services," *Annex Medical*, 2014 WL 4959142, at *2, or that any insurer in the individual market is willing to sell the employee plaintiffs such a plan. In *Annex Medical*, the district court had not considered whether the plaintiffs could in fact purchase the coverage that they desired, and so the Eighth Circuit "vacate[d] the district court's denial" of plaintiffs' motion for preliminary injunction and remanded for the "district court to use its superior fact-finding abilities to determine . . . whether subject matter jurisdiction exists." *Id.* at *3. Here, it is clear that this Court must make this determination "in the first instance." *Id.*

Equally clear is the standard of proof that applies to plaintiffs' showing of redressability. "Since" redressability is "not [a] mere pleading requirement[] but rather an indispensable part of [plaintiffs'] case," it "must be supported in the same way as any other matter on which . . . plaintiff[s] bear[] the burden of proof, *i.e.*, with the manner and degree of evidence required at the [relevant] stage[] of the litigation." *Lujan*, 504 U.S. at 561.[3] "In response to a summary judgment motion, . . . plaintiff[s] can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts . . . which for purposes of the summary judgment motion will be taken to be true. And at the final stage, those facts (if controverted) must be supported adequately by . . . evidence . . . ." *Id.* (quotations and citations omitted).

---

[3] Thus it is not, as plaintiffs claim, *defendants'* burden to show that March for Life's insurer would not sell plaintiffs certain coverage. Pls.' Mot. at 13. Because plaintiffs "invoke[e] federal jurisdiction," it is *their* burden to "establish the[] elements" of standing. *Lujan*, 504 U.S. at 561.

4

Plaintiffs have not appropriately set forth facts—much less submitted admissible evidence, as is required at this stage, *id.*—proving that but for the contraceptive coverage requirement their insurer would sell them coverage that accords with their beliefs. Accordingly, this Court must dismiss their claims for lack of jurisdiction. *See Annex Med.*, 2014 WL 4959142, at *3; *Wieland*, 978 F. Supp. 2d at 1012-16 (citing *Lujan*, 504 U.S. 555 (1992); *Nat'l Wrestling*, 366 F.3d 930 (D.C. Cir. 2004); and *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267 (D.C. Cir. 2007)).[4] While the particular factual circumstances have differed from case to case, the principle is the same and applies here: as in *Wieland*, for example, "[b]ecause [p]laintiffs' alleged injuries are linked with the independent discretionary actions of" plaintiffs' insurer, which is not before the Court, plaintiffs "allege only indirect causation between the [contraceptive coverage requirement] and their alleged injuries." *Id.* at 1013. "[T]here is no reason" plaintiffs' insurer "would be obligated to honor any 'incidental legal

---

[4] *Catholic Benefits Association v. Sebelius*, -- F. Supp. 2d --, 2014 WL 2522357 (W.D. Okla. 2014), also supports defendants' position. There, although the plaintiffs challenged only the federal contraceptive coverage requirement, a state law also required coverage of contraceptives. *Id.* at *3. Because "the federal law [was] more onerous than the state law," in that the federal requirement encompassed "coverage for emergency contraception" whereas the state law did not, the court determined that its ruling in the plaintiffs' favor "would redress an injury that [plaintiffs did] not face under [state] law." *Id.* at *4. The court acknowledged that "[s]tanding doctrine does not require complete redressability," and that "a plaintiff need show only that a favorable decision would redress *an* injury, not *every* injury," *id.* at *3 (quotations omitted), when it concluded that an order exempting the plaintiffs from the federal law would—fully and finally—relieve the plaintiffs of the obligation to cover certain contraceptives, even though, owing to the state law, it would not relieve them of the obligation to cover all contraceptives. Here, by contrast, plaintiffs have not demonstrated that *any* of their alleged injuries are redressable.

Plaintiffs' reliance on *Clinton v. City of New York*, 524 U.S. 417 (1998), and *Lepelletier v. FDIC*, 164 F.3d 37 (D.C. Cir. 1999), is also misplaced. Both concern the injury element of standing, *see Clinton*, 524 U.S. at 432; *Lepelletier*, 164 F.3d at 42, and say nothing relevant about redressability. Fundamentally, there is simply no exception to the rule articulated in *Lujan* and *National Wrestling*, and applied in *Annex Medical* and *Wieland*, for plaintiffs who allege the denial of an opportunity to develop a business relationship or purchase a good—for cases where, as here, the redressability of plaintiffs' alleged injuries hinges on the exercise of discretion by the non-party on the other side of the bargaining table. The D.C. Circuit has recognized only "two categories of cases where standing exists to challenge government action though the direct cause of injury is the action of a third party," *Renal Physicians*, 489 F.3d at 1275, and plaintiffs have not even attempted to argue that either category encompasses their claims.

determination the suit produce[d],'" and "[p]laintiffs have not met their burden to establish standing." *Id.* at 1015-16 (citing and quoting *Lujan*, 504 U.S. at 560, 568-70).

*Utah v. Evans*, 536 U.S. 452 (2002), confirms that plaintiffs have not established redressability. In *Evans*, the Supreme Court reiterated that, "[i]n a case [where] relief for the [plaintiff] depends on actions by a third party not before the court, the petitioner must *demonstrate* that a favorable decision would create 'a significant increase in the likelihood that the plaintiff would obtain relief that directly redresses the injury suffered.'" *Klamath Water Users Ass'n v. FERC*, 534 F.3d 735, 739 (D.C. Cir. 2008) (emphasis added) (quoting *Evans*, 536 U.S. at 464). Applying this principle, the D.C. Circuit has acknowledged that "[t]here will, of course, be occasions on which an order directed to a party before the court"—here, the defendants—"will significantly increase the chances of favorable action by a non-party"—here, theoretically, a health insurance issuer. *Id.* at 740. But the Circuit emphasized that what gives rise to such occasions—what is necessary "to satisfy redressability" in these circumstances—is "*evidence* that" the desired court order "would significantly affect" the non-party's decisionmaking. *Id.* (emphasis added, quotation omitted). In *Evans*, for example, it was established that the relief sought would trigger "consequent . . . steps" that "would be purely mechanical," and therefore that it was "substantially likely" to redress the plaintiffs' alleged injury. 536 U.S. at 463-64 (quotation omitted).

In this case, by contrast, plaintiffs have produced no admissible evidence showing that the injunction they seek would have any effect on an insurer's decisionmaking. They thus have not met their "heav[y]" "burden" to demonstrate that a decision in their favor "will *significantly increase* the likelihood" that their alleged injury will be redressed. *Spectrum Five LLC v. FCC*, 758 F.3d 254, 263-64 (D.C. Cir. 2014) (citing *Evans*, 536 U.S. at 464).

**A.** With regard to March for Life, plaintiffs' verified complaint states that March for Life's insurer "has indicated" to plaintiffs that "it would offer coverage to [March for Life]" that accords with plaintiffs' views "if doing so was legally permissible." Compl. ¶ 25. But this allegation does not suffice at this stage of the litigation because it is inadmissible as evidence of

whether March for Life's insurer is indeed willing to do so. "[A] verified complaint may be treated as an affidavit for summary judgment purposes," but the Federal Rules of Civil Procedure still require that it "'set out facts that would be admissible in evidence.'" *Lurie v. Mid-Atl. Permanente Med. Grp.*, 729 F. Supp. 2d 304, 323 (D.D.C. 2010) (quoting Fed. R. Civ. P. 56(c)(4)). The statement on which plaintiffs rely—their insurer's "indicat[ion]" that it would sell March for Life a certain policy, Compl. ¶ 25—is hearsay. March for Life's insurer is an out-of-court "declarant" and its "statement" can only be offered "to prove the truth of the matter asserted" because otherwise it is not relevant. Fed. R. Evid. 801(c).[5] The statement is therefore inadmissible, Fed. R. Evid. 802, and the Court "[can]not consider [it] in evaluating the sufficiency of" plaintiffs' claims to standing, *Lurie*, 729 F. Supp. 2d at 323 (citing *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999)).

**B.** The employee plaintiffs face an additional hurdle in proving that their alleged injury is redressable. Whereas defendants do not dispute the existence of *group* health insurance coverage that omits certain contraceptives, nothing indicates that such coverage is available on the market for individual policies. The regulations contain no exemptions for individual plans akin to the exemption for religious employers' group health plans. And there can be no doubt that, with regard to the employee plaintiffs' standing, the relevant question is whether they could purchase individual policies that are consistent with their religious beliefs. *See* Defs.' Mot. at 26-27.

In arguing the contrary, plaintiffs state that "[i]f March for Life's claims failed, but the employee [p]laintiffs' claims succeeded, the employee [p]laintiffs could . . . join together to get March for Life's insurer to sell them a morally acceptable [group] plan." Pls.' Opp'n at 14. But

---

[5] Plaintiffs protest that they do not offer their insurer's statement "for the truth of the matter asserted, but [instead] to demonstrate that [March for Life's] current insurer" is "willing[] to" sell March for Life a certain policy. Pls.' Opp'n at 14. But whether March for Life's insurer is willing to sell March for Life such a policy is the fact that is relevant to March for Life's standing, and it *is* the truth of the matter asserted by the insurer's out-of-court statement that "it would offer [such] coverage" to March for Life. Compl. ¶ 25. Moreover, whether "[p]laintiffs' testimony is . . . reliable," Pls.' Opp'n at 14, has no bearing on the hearsay inquiry.

plaintiffs' statement is legally irrelevant and factually unsupported. If March for Life's claims fail, which defendants believe they do, then the "group health plan" that March for Life sponsors would, by law, continue to "provide coverage for" the preventive care and screenings for women specified in the HRSA Guidelines, 42 U.S.C. § 300gg-13(4), which includes contraceptive services, HRSA Guidelines, AR at 284. In other words, even were the employee plaintiffs to succeed, a decision in *their* favor could not exempt *March for Life* from the contraceptive coverage requirement.

Furthermore, even if the opposite were true—even if the employee plaintiffs' hypothetical success could transfer to March for Life, notwithstanding that plaintiffs have failed to identify any authority in support of this novel proposition—the employee plaintiffs still have put forward no admissible evidence to demonstrate that, as a factual matter, "March for Life's insurer [would] sell them" group coverage for the employee plaintiffs only, tailored to the employee plaintiffs' particular beliefs. Pls.' Opp'n at 14.[6]

* * *

It is not defendants' position that plaintiffs' "standing is . . . precluded." *Lujan*, 504 U.S. at 562. To the contrary, defendants have identified how plaintiffs might satisfy their burden.[7] True, where redressability "depends on the unfettered choices made by" third parties, standing

---

[6] Also insufficient is the employee plaintiffs' assertion that, were the Court to rule in their favor, the Court's "injunction would open them to a market that they could present to insurance vendors." Pls.' Opp'n at 14. "In several cases, the Supreme Court has made clear that a plaintiff's standing fails where it is purely speculative that a requested change in government policy will alter the behavior of regulated third parties that are the direct cause of the plaintiff's injuries." *See Nat'l Wrestling*, 366 F.3d at 938-39 (collecting cases). Plaintiffs can only speculate that a decision in their favor would create a new market. Because they "offer nothing to substantiate their assertion," their claim to standing fails. *Id.* at 939.

[7] *See* Defs.' Mot. at 26 n.16 (with regard to plaintiff March for Life, offering that "suitable evidence" might consist of "a declaration from its insurer" stating "that its insurer would sell it a group health plan tailored to its specific objections if doing so was legally permissible"); *id.* at 28 n.19 (with regard to the employee plaintiffs, offering that "proper[] substantiat[ion]" might consist of "an appropriate declaration from an insurer offering individual plans").

"is ordinarily substantially . . . difficult to establish." *Id.* (quotation omitted). But if March for

Life's insurer is as willing as plaintiffs allege, then it should not be too difficult to provide a

short declaration saying so. Nonetheless, as the record stands, plaintiffs have "offer[ed] nothing

but speculation" and inadmissible hearsay "to substantiate their assertion that a favorable judicial

decision would result in" their procuring the coverage they want. *Nat'l Wrestling*, 366 F.3d at

933. Because plaintiffs have failed to "support[] adequately" with "evidence" their argument that

a decision granting them final judgment and "striking down" the contraceptive coverage

requirement would "afford [them] redress sufficient to support standing," plaintiffs' claims must

be dismissed for lack of subject matter jurisdiction. *Lujan*, 504 U.S. at 561-62.

## II.   EVEN IF THE COURT HAD JURISDICTION, PLAINTIFFS FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

### A. March for Life's Equal Protection Claim Fails

Like Title VII's exemption for certain religious organizations, the contraceptive coverage

requirement's exemption for religious employers is rationally related to "the proper purpose of

lifting a regulation that" might "burden[] the exercise of religion" by religious institutions. *Amos*,

483 U.S. at 338. Thus, given that the *Amos* Court *rejected* an equal protection claim that is

materially identical to March for Life's claim, *id.* at 338-39, defendants agree with plaintiffs that

"March for Life's equal protection rights are violated here in a way that secular entities' rights

were violated in . . . *Amos*," Pls.' Opp'n at 6—*i.e.*, not at all. Regardless, March for Life's claim

fails for fundamental reasons having to do with the nature of rational basis review—reasons that

were articulated in defendants' prior brief, *see* Defs.' Mot. at 16-18, but to which plaintiffs have

offered no response.[8]

---

[8] March for Life's attempts to distinguish *Amos*, *see* Pls.' Opp'n at 6-9, are not persuasive. March for Life protests that *Amos* is only an "Establishment Clause case[]," Pls.' Opp'n at 6, but *Amos*'s Equal Protection holding, 483 U.S. at 338-39, is widely recognized, *see, e.g.*, *Hsu v. Roslyn Union Free Sch. Dist. No. 3*, 85 F.3d 839, 863-64, 868-69 (2d Cir. 1996); *Dole v. Shenandoah Baptist Church*, 899 F.2d 1389, 1399-1400 (4th Cir. 1990). And while it is true that, unlike Title VII, the contraceptive coverage requirement does not regulate "who an [employer] can hire," Pls.' Opp'n at 8, the requirement's exemption for religious employers is fashioned to

March for Life concedes, as it must, that rational basis review applies. Pls.' Mot. at 8; Pls.' Opp'n at 4; *see Amos*, 483 U.S. at 339; *see, e.g.*, *Hsu*, 85 F.3d at 868. Under rational basis review, "a classification 'must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for [it].'" *Heller v. Doe*, 509 U.S. 312, 320 (1993) (collecting cases) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "A classification . . . is accorded a strong presumption of validity," and the "burden is on the one attacking [it] to negative *every conceivable basis which might support it*, . . . whether or not the basis has a foundation in the record." *Id.* at 319-21 (emphasis added, quotations omitted).

Here, the government's rationale for limiting the religious employer exemption to religious entities is stated repeatedly in the administrative record: the religious employer exemption "respect[s] the religious interests of houses of worship and their integrated

---

respect "'the unique relationship between a house of worship and its employees,'" 78 Fed. Reg. at 8,461, AR at 170 (quoting 76 Fed. Reg. at 46,623). It therefore concerns "religious organizations['] interest in autonomy in ordering their internal affairs" in ways similar to the exemption addressed in *Amos*, 483 U.S. at 341 (Brennan, J., concurring).

March for Life misses the mark in attempting to distinguish *Amos* because the plaintiffs there purportedly "attempt[ed] to negate the religious group exemption," whereas March for Life "does not seek to repeal the exemption for religious employers" but rather seeks to expand it "to include [secular employers like] March for Life." Pls.' Opp'n at 7. In fact, were the Court to conclude (contrary to defendants' arguments) that the religious employer exemption violates Equal Protection, it is not clear whether the remedy would be to expand or to eliminate the exemption. *See Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 426-27 (2010) ("How equality is accomplished—by extension or invalidation of the unequally distributed benefit or burden, or some other measure—is a matter on which the Constitution is silent." (citing *Heckler v. Matthews*, 465 U.S. 728, 740 (1984))). Regardless, it is not March for Life that gets to choose. Rather, "[o]n finding unlawful discrimination," courts "attempt . . . to implement what the [government] would have willed had it been apprised of the constitutional infirmity," and "[t]he relief the complaining party requests does not circumscribe this inquiry." *Id.* at 427.

Finally, March for Life claims that *Amos* is distinguishable because the contraceptive coverage requirement "discriminates among religious groups," Pls.' Opp'n at 8, but nearly every court to have considered the issue has concluded to the contrary. *E.g.*, *Mich. Catholic Conf. v. Burwell*, 755 F.3d 372, 394 (6th Cir. 2014), *reg'h en banc denied*, Nos. 13-2723, 13-6640 (Sept. 16, 2014); *see* Defs.' Mot. at 38 n.23 (collecting cases). Nor does March for Life, which is avowedly "non-religious," Compl. ¶¶ 5, 118, have standing to raise such a claim.

auxiliaries," 78 Fed. Reg. at 39,874, AR at 6, thus protecting the religious exercise and autonomy of religious institutions.[9] March for Life's focus on other statements in the record, which note that the employees of religious employers are likely to share the employers' objection to contraceptives and therefore are "less likely than other people to use contraceptive services," 78 Fed. Reg. at 39,874, is misplaced. These statements are unrelated to the rationale behind the religious employer exemption. Rather, they pertain to why the exemption "does not undermine the governmental interests furthered by the contraceptive coverage requirement." *Id.*[10]

Moreover, even if these statements were a "concession" about the exemption, Pls.' Opp'n at 2—which they are not—they do not advance March for Life's equal protection claim. March for Life gets it precisely backward when it asserts that it is the government's burden to "offer[] a[] rational explanation about why" the contraceptive coverage requirement "needs to be imposed on March for Life." Pls.' Opp'n at 5. Instead, it is March for Life's "high burden 'to negative every conceivable basis' for" the requirement and the scope of its exemption for religious employers. *Gordon v. Holder*, 721 F.3d 638, 657 (D.C. Cir. 2013) (quoting *Beach Commc'ns*, 508 U.S. at 315). March for Life has failed in this regard. It has not shown that the religious employer exemption is not rationally related to the purpose of "respect[ing] the

---

[9] *See* 76 Fed. Reg. at 46,623, AR at 220 (the religious employer exemption "respects the unique relationship between a house of worship and its employees," and is "consistent with the policies of [s]tates that require contraceptive services coverage, the majority of which simultaneously provide for a religious accommodation"); *id.* (the exemption "respect[s] the unique relationship between certain religious employers and their employees"); 78 Fed. Reg. at 8,461, AR at 170 (the definition of "religious employer" in the exemption is "intended to focus the . . . exemption on 'the unique relationship between a house of worship and its employees'" (quoting 76 Fed. Reg. at 46,623)); *id.* (affirming that "group health plans of houses of worship that provide educational, charitable, or social services to their communities qualify for the exemption").

[10] *See Templeton v. Comm'r*, 719 F.2d 1408, 1413-14 (7th Cir. 1983) (permitting a narrow exemption where the government was concerned that a broader one "could conceivably undermine" the government's interests); *cf. Priests for Life v. U.S. Dep't of Health & Human Servs.*, -- F Supp. 2d --, 2013 WL 6672400, at *11 (D.D.C. 2013) (addressing the statements that March for Life highlights and rejecting the contention that they "reveal[] a discriminatory intent toward" employers that "oppose contraceptive[s]" but that "do not qualify for the exemption").

religious interests of houses of worship and their integrated auxiliaries." 78 Fed. Reg. at 39,874.[11] Nor has March for Life addressed the overwhelming authority confirming that accommodating the religious exercise of religious institutions is a legitimate and proper governmental purpose.[12]

Ultimately, "[d]efining the class of" employers eligible for the religious employer exemption "inevitably requires that some" employers that "have an almost equally strong claim to favored treatment be placed on different sides of the line." *Beach Commc'ns*, 508 U.S. at 315-16 (quotation omitted). Defendants do not believe that March for Life's claim to an exemption from the contraceptive coverage requirement is as strong as that of houses of worship and their integrated auxiliaries. *See* U.S. Const. amend. I. But regardless, because rational basis review applies, "the fact [that] the line might have been drawn differently at some points is" not "a matter [fit] for . . . judicial[] consideration." *Beach Commc'ns*, 508 U.S. at 316 (quotation omitted). "'[E]ven if the [contraceptive coverage requirement] is to some extent both underinclusive and overinclusive," this Court "must uphold" it. *Gordon*, 721 F.3d at 656 (quoting *Vance v. Bradley*, 440 U.S. 93, 108 (1979)). March for Life's equal protection claim is that the requirement is overinclusive (or, as a corollary, that the exemption is underinclusive), but this does not suffice under rational basis review. *Id.*

Attempting to avoid this line of binding precedent, March for Life turns to the Seventh Circuit's decision in *Center for Inquiry, Inc. v. Marion Circuit Court Clerk*, 758 F.3d 869 (7th

---

[11] March for Life claims that the exemption is too narrow to accomplish this aim, but its allegation that "the government has refused to exempt most non-profit religious groups" that are not houses of worship from the contraceptive coverage requirement, Pls.' Opp'n at 8 (emphasis omitted), is incorrect. As the Supreme Court recognized in *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751 (2014), the accommodations that are available to religious nonprofits "effectively exempt[]" them from the requirement. *Id.* at 2763; *see* Defs.' Mot. at 8 n.6.

[12] *See* Defs.' Mot. at 13-18 (citing, *inter alia*, *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 132 S. Ct. 694, 706 (2012); *Cutter v. Wilkinson*, 544 U.S. 709, 724 (2005); *Amos*, 483 U.S. at 339; *id.* at 341-42 & n.3 (Brennan, J., concurring); *Lynch v. Donnelly*, 465 U.S. 668, 687 (1984); *Walz v. Tax Comm'n*, 397 U.S. 664, 666 (1970); *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547, 560 (7th Cir. 2014); *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013)).

Cir. 2014). But two key differences between the Indiana statute at issue there and the religious employer exemption to the contraceptive coverage requirement readily distinguish that case. First, the Indiana statute conferred positive rights (the authority to solemnize a marriage) on an assortment of religious and non-religious actors, *id.* at 870; and second, it did so in an entirely arbitrary fashion, discriminating among religions even without regard to the factors that might have mattered for purposes of marriage solemnization (for example, whether a religion considers marriage as a sacrament and has a clergy-led structure), *id.* at 872-75 (articulating in detail the statute's inconsistencies and emphasizing that "[n]eutrality is essential to the validity of an accommodation" (collecting cases)). The religious employer exemption to the contraceptive coverage requirement, by contrast, does not confer positive rights but rather "lift[s] a regulation that" might "burden[] the exercise of religion," *Amos*, 483 U.S. at 338; *see* 78 Fed. Reg. at 39,874, AR at 6; and it does so for *all* houses of worship and their integrated auxiliaries, without discrimination, *id.*; *see supra* n.8. The religious employer exemption therefore differs from the Indiana statute in all the ways that matter, per *Amos*: laws that do not "discriminat[e] among religions" are subject to rational basis review and survive an Equal Protection challenge if they are "rationally related to the legitimate purpose of alleviating . . . governmental interference with the ability of religious organizations to define and carry out their religious missions." 483 U.S. at 339 (emphasis omitted). The religious employer exemption passes this test.

Moreover, even *Center for Inquiry*—the case on which March for Life relies most heavily—in fact supports defendants' position. As March for Life notes, in that decision "[t]he Seventh Circuit concluded that '[a]n accommodation cannot treat religions favorably when secular groups are identical with respect to the attribute selected for that accommodation.'" Pls.' Opp'n at 5 (second alteration in the original) (quoting *Ctr. for Inquiry*, 758 F.3d at 872). "*Center for Inquiry* . . . recognized that," with regard to "the underlying purpose of marriage solemnization[,] atheist group leaders and religious clergy" were "indistinguishable," as evidenced in particular by the fact that "the state of Indiana" admitted that it "would have been glad to let the atheists . . . solemnize marriage if only they would categorize themselves as

13

religious." *Id.* (citing *Ctr. for Inquiry*, 758 F.3d at 873-75). "Marriage solemnization" in Indiana, therefore, "did not require religious sincerity as such, and the state was even 'willing[] to recognize marriages performed by hypocrites.'" *Id.* at 6 (quoting *Ctr. for Inquiry*, 758 F.3d at 875). Here, however, the underlying purpose of the religious employer exemption is to "respect the religious interests of houses of worship and their integrated auxiliaries," 78 Fed. Reg. at 39,874, AR at 6, and non-religious organizations like March for Life do not have religious interests. Because March for Life is not "identical" (or even similar) to religious employers "with respect to the attribute selected for [the exemption]," *Ctr. for Inquiry*, 758 F.3d at 872, March for Life's exclusion from the religious employer exemption does not violate equal protection.

### B. The Employee Plaintiffs' RFRA Claim Fails

Even if the Court had jurisdiction over the employee plaintiffs' RFRA claim, it would not succeed. "[O]nly substantial burdens on the exercise of religion trigger [RFRA's] compelling interest requirement," *Henderson v. Kennedy*, 253 F.3d 12, 17 (D.C. Cir. 2001), and "[a]n inconsequential or *de minimis* burden on religious practice does not rise to this level," *Kaemmerling* v. *Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008).[13] Thus, although defendants do not dispute the sincerity of the employee plaintiffs' religious beliefs, it is not enough that they themselves claim a substantial burden. Rather, whether a burden is substantial under RFRA "is a question of law" for the court to decide, not a "'question[] of fact, proven by the credibility of the claimant.'" *Mich. Catholic Conf.*, 755 F.3d at 385 (alteration in the original) (quoting *Mahoney v. Doe*, 642 F.3d 1112, 1121 (D.C. Cir. 2011)); *see Kaemmerling*, 553 F.3d at 673-74, 678-79.

As the employee plaintiffs admit, the contraceptive coverage requirement "does not force women to use contraception." Pls.' Opp'n at 3 n.1. Indeed, the provision and use of

---

[13] *See Combs v. Homer-Center Sch. Dist.*, 540 F.3d 231, 262 (3d Cir. 2008) (Scirica, C.J., concurring) ("[V]irtually all legislation . . .  imposes an incidental burden at some level by placing indirect costs on an individual's activity. Recognizing this," in RFRA Congress "identified a substantiality threshold as the tipping point for requiring heightened justifications for governmental action.")

contraceptives are "entirely activities of [third parties], in which [the employee plaintiffs] play[] no role," and those activities therefore "cannot be said to hamper [the employee plaintiffs'] religious exercise." *Kaemmerling*, 553 F.3d at 679. The contraceptive coverage requirement does not even apply to the employee plaintiffs. *See* 42 U.S.C. § 300gg-13(a) (specifying that the requirement applies to "group health plan[s] and health insurance issuer[s]"). Simply put, a law that does not apply to the employee plaintiffs, and that concerns (but does not require the use of) preventive health services that they "simply choose not to use," Pls.' Opp'n at 3 n.1, does not substantially burden their religious exercise. That alone is enough to defeat the employee plaintiffs' RFRA claim on the merits.

Alternatively, and again only if the Court determines that it has jurisdiction, the Court could dispense with the RFRA claim on the compelling interest and least restrictive means grounds. *See, e.g.*, *Hamilton v. Schriro*, 74 F.3d 1545, 1552, 1557 (8th Cir. 1996) (assuming, without deciding, that the challenged regulations substantially burdened the plaintiff's religious exercise and upholding the regulations under strict scrutiny). Indeed, the employee plaintiffs have all but conceded defendants' argument that providing the kind of individual exemptions that the employee plaintiffs seek would undermine the government's compelling interest in a workable insurance system that covers a wide range of preventive health services.

**1.** The government's interest is unquestionably compelling. *See, e.g.*, *Lee*, 455 U.S. at 258. And in their prior brief, defendants demonstrated that "granting the . . . religious [exemptions]" that the employee plaintiffs request "would seriously compromise" the insurance market, *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 435 (2006), because group health coverage, in order to function, relies on common coverage for a set of insured individuals. Defendants have therefore shown that RFRA's compelling interest test is satisfied "to the person." *Id.* at 430 (quotation omitted); *see* Defs.' Mot. at 30-36.

The employee plaintiffs' response is inadequate. They relegate their discussion of the government's compelling interest in a functioning insurance system—the interest that matters for purposes of the employee plaintiffs' RFRA claim—to less than a page at the end of the relevant

section of their brief, Pls.' Opp'n at 26-27, and in doing so concede that this interest is

sufficiently specific, *cf. id.* at 21-26 (arguing that other interests asserted by the government—

those relevant to the employee plaintiffs' Free Exercise claim—are too "broadly formulated").[14]

More importantly, the employee plaintiffs have not addressed defendants' argument that,

as in *Lee*, the kind of "individual [exemptions]" that the employee plaintiffs seek would

"undermine the soundness of the [insurance system]." 455 U.S. at 258. Although *Lee* concerned

Social Security, its logic applies to the insurance system as well. The Ninth Circuit recognized as

much when, citing *Lee*, it rejected a RFRA challenge to a health insurance requirement because

"[m]andatory uniform participation . . . is essential to the insurance system's survival."

*Goehring*, 94 F.3d at 1301; *see* Defs.' Mot. at 33-34 (discussing *Lee* and *Goehring*).

The employee plaintiffs do not even discuss *Goehring*, and in any event have failed to

overcome defendants' showing that, like the mandatory health insurance program at issue there

and the Social Security program at issue in *Lee*, the Affordable Care Act's preventive services

coverage provision could not function if individuals could opt out by asserting religious

objections. "The [Supreme] Court has long recognized that balance must be struck between the

values of [a] comprehensive social security system, which rests on a complex of actuarial factors,

and the consequences of allowing religiously based exemptions." *Lee*, 455 U.S. at 259.

Permitting "myriad exceptions flowing from a wide variety of religious beliefs" is incompatible

with the system of group health coverage that Congress sought to promote in the Affordable

Care Act—a system in which "mandatory participation is indispensable." *Id.* at 259-60.

The employee plaintiffs attempt to distinguish *Lee* by asserting that, while the Social

Security Act "applie[s] generally," the contraceptive coverage requirement is subject to a "vast

---

[14] In their prior brief, defendants cited the government's interest in a functioning insurance
system when addressing the employee plaintiffs' RFRA claim, Defs.' Mot. at 30-36, and then,
when showing that the requirement does not violate the Free Exercise Clause even if strict
scrutiny applies, described how the requirement furthers the government's interests in public
health and gender equality, *id.* at 40-42. In their responsive brief, the employee plaintiffs ignore
this distinction and address all three compelling interests together when discussing RFRA.

scheme of categorical exemptions." Pls.' Opp'n at 26-27. The employee plaintiffs, however, are mistaken. In fact, the contraceptive coverage requirement also applies generally, *see* Defs.' Mot. at 34-36, 39-40 & n.24, and the employee plaintiffs' claim to the contrary rests on a misunderstanding of the relevant provisions of the Affordable Care Act.[15]

**2.** The employee plaintiffs propose that, rather than requiring health plans to include coverage of contraceptives, the government should create a new program to distribute contraceptives, subsidize their purchase by individuals, or expand existing national family planning programs. Pls.' Opp'n at 28-29. But RFRA's least-restrictive means test has never been interpreted to require Congress to create and fund new programs. The employee plaintiffs argue that *Hobby Lobby* provides a counterexample, Pls.' Opp'n at 29, but they are incorrect. In *Hobby Lobby*, the majority explicitly acknowledged that it was "not rely[ing] on the option of a new, government-funded program" in concluding that the regulations applicable to for-profit employers "fail the least-restrictive-means test." 134 S. Ct. at 2781-82 (relying instead on the

---

[15] Specifically, the Affordable Care Act's grandfathering provision, 42 U.S.C. § 18011, is not an exemption, but rather postpones compliance with certain statutory requirements, including the preventive services coverage requirement, until a plan makes one or more specified changes, 45 C.F.R. § 147.140(g). The grandfathering provision merely effects a transition in the marketplace, and fewer and fewer group health plans will be grandfathered over time. *See* 78 Fed. Reg. at 39,887 n.49; Kaiser Family Foundation and Health Research & Educational Trust, Employer Health Benefits 2013 Annual Survey at 7, 196, *available at* http://goo.gl/9FKG5o (showing that the percentage of employees in grandfathered plans is steadily declining, having dropped from 56 percent in 2011 to 48 percent in 2012 to 36 percent in 2013). This incremental transition does not undermine the government's compelling interests, and is not at all akin to the permanent exemption that the employee plaintiffs seek. More importantly, the grandfathering provision applies at the *plan* level and does not raise the feasibility problems that would result if individual plan *participants* were allowed to determine which services they would like their premiums to cover. The same is true of the religious employer exemption and the accommodations for religious nonprofits, *see* 45 C.F.R. § 147.131, which also operate plan-wide. Finally, the treatment of self-insured church plans under the accommodations provides no evidence for the employee plaintiffs' claim of "selective nonenforcement." Pls.' Mot. at 26. That the government lacks administrative enforcement authority against the third-party administrators of such plans does not constitute an exemption, and defendants have worked to ensure that the participants in such plans can access contraceptive coverage without cost-sharing, *e.g.*, 45 C.F.R. § 145.50(d), precisely because the interests at stake are so compelling.

accommodations that are available to religious nonprofits). As Justice Kennedy emphasized, the Supreme Court did "not address whether the proper response to a legitimate claim for freedom in the health care arena is for the [g]overnment to create an additional program." *Id.* at 2786 (Kennedy, J., concurring).

More fundamentally, the alternatives that the employee plaintiffs' propose would not "equally further[] the [g]overnment's interest[s]." *Id.* In the Affordable Care Act, Congress built on the system of employment-based coverage and private insurance rather than replacing it with government-provided benefits. The employee plaintiffs' proposals would conflict with that goal for the reasons that defendants have explained, *see* Defs.' Mot. at 37, and that the employee plaintiffs have failed to address.

**C. The Employee Plaintiffs' Free Exercise Claim Fails**

**1.** The overwhelming weight of authority confirms that the contraceptive coverage requirement is a neutral law of general applicability and therefore does not violate the Free Exercise Clause. *See id.* at 38 n.23 (collecting cases). The employee plaintiffs have ignored these decisions, which have issued from nearly every court that has considered claims identical to theirs—including the only Court of Appeals, and the only other courts in this district, to have done so. *See, e.g.*, *Mich. Catholic Conf.*, 755 F.3d at 393-94; *Priests for Life*, 2013 WL 6672400, at *10-12; *Roman Catholic Archbishop of Wash. v. Sebelius*, -- F. Supp. 2d --, 2013 WL 6729515, at *27-31 (D.D.C. 2013). The employee plaintiffs again press the claim that a "scheme of exemptions, grandfathering provisions, and non-enforcement" makes the requirement not generally applicable, Pls.' Opp'n at 30, but as the Sixth Circuit stated in rejecting this claim, their "argument misunderstands the meaning of general applicability" under the Free Exercise Clause, *Mich. Catholic Conf.*, 755 F.3d at 394. In any event, as defendants have already explained, what plaintiffs call "exemptions" are not really exemptions at all. *See supra* n.15.

The employee plaintiffs also claim that the contraceptive coverage requirement "is not neutral," alleging that "it distinguishes among religious objectors." Pls.' Opp'n at 30. The employee plaintiffs' allegation is false, however, as numerous courts have recognized. Defs.'

Mot. at 39; *see, e.g.*, *Mich. Catholic Conf.*, 755 F.3d at 393-94. The contraceptive coverage requirement does not "divid[e] religious objectors into favored and disfavored groups," and is in fact neutral because it does "not under any circumstance treat employers with religious objections less favorably than any other employers." *Priests for Life*, 2013 WL 6672400, at *10-11 (quotation omitted). Defendants respectfully suggest that this Court should "reject[] [plaintiffs'] Free Exercise Clause challenge[]," and thus "agree[] with the vast majority of courts which have considered the issue and [which have] found that the" contraceptive coverage requirement is "neutral and generally applicable." *Id.* at *10 (collecting cases).

**2.** Even if the contraceptive coverage requirement were not neutral and generally applicable, plaintiffs' Free Exercise claim would still fail because the contraceptive coverage requirement satisfies strict scrutiny. *See* Defs.' Mot. at 36-37, 40-42. In *Hobby Lobby*, the majority assumed without deciding that the contraceptive coverage requirement furthers compelling interests, 134 S. Ct. at 2780, and five members of the Supreme Court endorsed the position that providing contraceptive coverage to employees "serves the [g]overnment's compelling interest in providing insurance coverage that is necessary to protect the health of female employees, coverage that is significantly more costly than for a male employee," *id.* at 2785-86 (Kennedy, J., concurring); *accord id.* at 2799-800 & n.23 (Ginsburg, J., dissenting).[16]

The employee plaintiffs do not advance their cause by criticizing the Institute of Medicine's report. Pls.' Opp'n at 21-26; *see* AR at 285-534 (IOM Report). The IOM Report is the work of independent experts in the field of public health. After undertaking an extensive science-based review of the available evidence, IOM determined that cost-free access to the full range of FDA-approved contraceptive methods, sterilization procedures, and patient education and counseling for women with reproductive capacity is necessary for women's health and well-

---

[16] This underscores why plaintiffs cannot rely on the discussion of the government's compelling interests in public health and gender equality in *Gilardi v. U.S. Dep't of Health & Human Servs.*, 733 F.3d 1208 (D.C. Cir. 2013), *vacated*, 134 S. Ct. 2902 (2014) ("vacated, and . . . remanded . . . for further consideration in light of [*Hobby Lobby*]"); *see* Defs.' Mot. at 31 n.21.

being. The HRSA Guidelines, which were based on the IOM's expert recommendations, are entitled to deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984); *see also Marsh v. Or. Natural Res. Council*, 490 U.S. 360, 376-77 (1989) (emphasizing that deference is particularly appropriate when an interpretation implicates scientific and technical judgments within the scope of agency expertise).

Moreover, the employee plaintiffs' second-guessing of IOM's expert conclusions is unavailing. For example, plaintiffs suggest that the government has failed to identify "an actual problem in need of solving," Pls.' Mot. at 23 (quotation omitted), but they fail to mention the IOM's findings that, based on 2001 data, "an estimated 49 percent of all pregnancies in the United States were unintended," that "[u]nintended pregnancy is highly prevalent in the United States," and that "[t]he unintended pregnancy rate is much lower in other developed countries." IOM REP. at 102, AR at 400. Plaintiffs' attempts to draw conclusions from their cherry-picked data only illustrates the importance of giving proper deference to the public health experts at IOM, who were able to reach science-based recommendations after surveying a wide range of evidence in the field.

Plaintiffs' reliance on law review articles, *see* Pls.' Mot. at 22-26 (citing, *inter alia*, Helen M. Alvare, *No Compelling Interest: The 'Birth Control' Mandate & Religious Freedom*, 58 VILL. L. REV. 379 (2013)), is particularly inappropriate. A law review article is a poor substitute for the scientific studies relied on by the IOM. Furthermore, the materials plaintiffs cite are not part of the administrative record and therefore should not be considered by the Court. *See, e.g.*, *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 714-15 (1963) (where a court's "reviewing function is . . . limited to consideration of the decision of the agency," the "[Supreme] Court has held that consideration is to be confined to the administrative record" (collecting cases)). In fact, plaintiffs have failed to address the thousands of pages of studies that *are* part of the record, *see, e.g.*, AR at 535-2054, and that debunk plaintiffs' claim that the "government's evidentiary case rests on eleven pages" from the IOM Report, Pls.' Opp'n at 23. Defendants produced the administrative record to plaintiffs when defendants filed their motion to dismiss or, in the

alternative, for summary judgment, and yet plaintiffs' opposition does not contain a single citation to it. This violates the Local Rules, *see* LCvR 7(h)(2), and illustrates the ways in which plaintiffs have ignored the requirements and standards that attend challenges to agency action.[17]

### D. Plaintiffs' Administrative Procedure Act Claims Fail

**1.** Plaintiffs' claim that the contraceptive coverage requirement is contrary to law because it violates RFRA, the First Amendment's Free Exercise Clause, and the Fifth Amendment's Equal Protection guarantee fails for the reasons described above, *see supra* sections II(A)-(C), and in defendants' prior brief, *see* Defs.' Mot. at 11-18, 28-42. And plaintiffs' claim that the exemption for religious employers is arbitrary and capricious because it does not encompass non-religious entities fails for the same reasons that March for Life's materially identical equal protection claim fails. *See supra* Section II(A); Defs.' Mot. at 11-18.

---

[17] Nonetheless, were the Court to review extra-record materials, and specifically in response to plaintiffs' suggestion that there is no evidence that requiring coverage for contraceptives without cost-sharing will further the government's compelling interests, *see* Pls.' Mot. at 25, it is relevant to note that two recently published studies refute plaintiffs' claim. *See* Sue Ricketts, Greta Klingler, & Renee Schwalberg, *Game Change in Colorado: Widespread Use of Long-Acting Reversible Contraceptives and Rapid Decline in Births Among Young, Low-Income Women*, 46 PERSP. ON SEXUAL & REPROD. HEALTH, no. 3 (Sept. 2014), *available at* http://goo.gl/SzuEkX (summarized in Press Release, State of Colorado (July 3, 2014), *available at* http://goo.gl/scSLrH); Gina M. Secura et al., *Provision of No-Cost, Long-Acting Contraception and Teenage Pregnancy*, 371 NEW ENG. J. MED. 1316 (2014), *available at* http://goo.gl/JLXsHA (reported in Pam Belluck, *A Study Bolsters a Call to Use Long-Acting Contraceptives*, N.Y. TIMES, Oct. 1, 2014, at A21, *available at* http://goo.gl/MO0xc5). In addition, the record contains an earlier report based on the same cohort study as that recently assessed in the *New England Journal of Medicine, id.*, that observed "a clinically and statistically significant reduction in abortion rates, repeat abortions, and teenage birth rates" as a result of increased access to cost-free long-acting reversible contraceptive methods, *see* AR at 552-58. Also in the administrative record is a report of a study documenting that national family planning programs "prevent[] 1.94 million unintended pregnancies, including almost 400,000 teen pregnancies, each year." *See* AR at 1576-77.

These are only a few examples showing that plaintiffs' analysis—unscientific and derived mainly from law reviews—not only fails to engage the evidence in the administrative record but pales in comparison to it. More importantly, these examples confirm why "it is not [this Court's] job to referee battles among experts," but instead "only to evaluate the rationality of [the agencies'] decision." *Mississippi v. EPA*, 744 F.3d 1334, 1348 (D.C. Cir. 2013).

**2.** Plaintiffs now press the claim that the contraceptive coverage requirement itself, as applied to plaintiffs only, is arbitrary and capricious because it requires coverage that plaintiffs do not want. Pls.' Opp'n at 1-2. But plaintiffs ignore the deferential arbitrary and capricious standard of review, which requires courts to consider agency action as a whole, not only with regard to a few individuals or a single organization. Indeed, just as rational basis review does not permit March for Life to demand an "explanation" for "why the" contraceptive coverage requirement must "be imposed on March for Life," Pls.' Opp'n at 5, but instead places the burden on plaintiffs, *see supra* pp. 11-12, "[u]nder the Administrative Procedure Act" it is *plaintiffs'* "burden . . . to show that the [contraceptive coverage requirement] is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Nuvio Corp. v. FCC*, 473 F.3d 302, 305 (D.C. Cir. 2006) (quoting 5 U.S.C. § 706(2)(A)). Plaintiffs have cited no authority suggesting that the APA empowers those who challenge agency rulemakings—or, more importantly, the courts that adjudicate such challenges—to require the agency to justify its decision with regard to every individual entity that it affects. Rather, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow," *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983), and courts are "generally unwilling" to question agency line drawing "unless a [challenger] can demonstrate that lines drawn . . . are patently unreasonable," *WorldCom*, 238 F.3d at 462 (some alterations in the original, quotation omitted). Plaintiffs have not done so here.

Circuit precedent is directly on point. In *National Shooting Sports Foundation v. Jones*, for example, the plaintiff argued that an agency "drew an improper line in determining" which entities were covered by a particular agency policy. 716 F.3d 200, 214 (D.C. Cir. 2013). The D.C. Circuit held that the plaintiff's "line-drawing argument fail[ed]," emphasizing that "[a]n agency has 'wide discretion' in making line-drawing decisions" and "'is only required to identify the standard and explain its relationship to the underlying regulatory concerns.'" *Id.* (quoting *WorldCom*, 238 F.3d at 461-62).

The government has satisfied this standard. As summarized in defendants' opening brief, *see* Defs.' Mot. at 4-9, 40-42, and as described in detail in the preamble to the 2013 final regulations, *see* 78 Fed. Reg. at 39,871-88, AR at 3-20, the scope of the contraceptive coverage requirement's applicability is justified by the scope of the problems it addresses. In particular, the defendant agencies have explained why the requirement applies broadly to non-religious employers, including March for Life, but not to religious employers. Religious employers are exempted out of "respect" for their "religious interests." 78 Fed. Reg. at 39,874, AR at 6; *see SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (a "fundamental rule of administrative law" holds that a court reviewing agency decisionmaking "must judge the propriety of [the agency's] action solely by the grounds invoked by the agency"). March for Life, on the other hand, "is not religious." Compl. ¶¶ 63, 81.

**3.** Plaintiffs have now identified two comments (out of thousands defendants received) that they allege defendants ignored during the rulemaking, and that "ask[ed] that exemptions" to the contraceptive coverage requirement "encompass non-religious pro-life organizations." Pls.' Opp'n at 3. Yet, in the notice of proposed rulemaking, defendants acknowledged that "[s]everal commenters stated that the rules should accommodate all organizations with a religious or moral objection to contraceptive coverage, whether the organization is religious or secular, or nonprofit or for-profit, among other potential distinctions," 78 Fed. Reg. at 8,459-60, AR at 168-69, and in the 2013 final regulations, defendants explained why they were rejecting those and other commenters' proposals, *see id.* at 39,873-74, AR at 5-6. The APA requires no more.

In any event, a rulemaking "cannot be found wanting simply because the agency failed to include every alternative . . . thought conceivable by the mind of man." *State Farm*, 463 U.S. at 51 (quotation omitted); *see Nat'l Shooting Sports Found*., 716 F.3d at 215 (rejecting an APA challenge "based on [the agency's alleged] failure to explain why it did not adopt [a commenter's] alternative" because an agency "need not consider every alternative proposed nor respond to every comment made" (collecting cases)). Even were the Court to conclude that defendants "did not specifically explain why [they] did not adopt [plaintiffs'] alternative"—

expanding the *religious* employer exemption to encompass *non-religious* entities—"the record reveals that the alternative was not a significant problem[] raised by the comments." *Id.* (quotation omitted).

**4.** Finally, plaintiffs claim that the contraceptive coverage requirement is contrary to law, alleging that it violates, *inter alia*, (i) the provision of the Affordable Care Act stating that "nothing in this title . . . shall be construed to require a qualified health plan to provide coverage of [abortion services] as part of its essential health benefits for any plan year," 42 U.S.C. § 18023(b)(1)(A)(i); and (ii) the Church Amendment, which protects individuals from being required to "perform or assist in the performance of any part of a health service program or research activity funded . . . by the Secretary of [HHS] if his performance or assistance . . . would be contrary to his religious beliefs or moral convictions," 42 U.S.C. § 300a-7(d); *see* Pls.' Mot. at 19, 20. But plaintiffs have failed to respond to defendants' arguments, *see* Defs.' Mot. at 19-20, that plaintiffs' claims do not fall within "the zone of interests to be protected or regulated by" the relevant statutory guarantees, *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 153 (1970), because plaintiffs neither purchase a "qualified health plan" within the meaning of the Affordable Care Act, 42 U.S.C. § 18023(b)(1)(A)(i), nor "perform or assist in the performance" of a "health service program or research activity funded . . . under a program administered by the Secretary of [HHS]" within the meaning of the Church Amendment, 42 U.S.C. § 300a-7(d). Plaintiffs have therefore conceded that they cannot claim that the regulations violate these statutory provisions.

Regardless, and as specifically relevant to plaintiffs' Weldon Amendment claim, plaintiffs' allegation that the regulations require coverage of abortion is incorrect. *See, e.g.*, *Mich. Catholic Conf.*, 755 F.3d at 396-97 (rejecting identical claim). As defendants have explained, *see* Defs.' Mot. at 20-22, the contraceptive coverage requirement does not require that any health plan cover "abortion" according to federal law's longstanding definition of that term. Indeed, Representative Weldon, the sponsor of the Weldon Amendment, did not consider the word "abortion" to include FDA-approved contraceptives. He called it "a tremendous

misinterpretation or a tremendous stretch of the imagination" to suggest that his proposal would affect the provision of contraceptive services. 148 Cong. Rec. H6566, H6580 (daily ed. Sept. 25, 2002) ("The provision of contraceptive services has never been defined as abortion in Federal statute, nor has emergency contraception . . . . [U]nder the current FDA policy[,] that is considered contraception, and it is not affected at all by this statute."); *see Fed. Energy Admin. v. Algonquin SNG, Inc.*, 426 U.S. 548, 564 (1976) (relying heavily on statements by the sponsors of legislation in interpreting the statute).

Decades of regulatory policy and practice have consistently considered FDA-approved contraceptives not to cause abortions, and that determination is entitled to deference. *See Bhd. of R.R. Signalmen v. Surface Transp. Bd.*, 638 F.3d 807, 815 (D.C. Cir. 2011) (according particular deference to an agency's longstanding interpretation). And just as the regulatory policy has not changed, Congress has continued to reenact restrictions dealing with abortion without change, suggesting that Congress has acted, then and now, consistent with this regulatory policy. *See Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230, 239-40 (2009) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." (quotation omitted)).

Because it reflects a settled understanding of FDA-approved contraceptives that accords with existing federal laws, the contraceptive coverage requirement is not contrary to any law dealing with abortion.

## **CONCLUSION**

The Court should grant defendants' motion to dismiss or, in the alternative, for summary judgment.

Dated: October 21, 2014                              Respectfully Submitted,

                                                     JOYCE R. BRANDA
                                                     Acting Assistant Attorney General

                                                     RONALD C. MACHEN, JR.
                                                     United States Attorney

JENNIFER RICKETTS
Director

SHEILA M. LIEBER
Deputy Director

/s/ *Adam Grogg*

ADAM GROGG (N.Y. Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20001
phone: (202) 514-2395
fax:  (202) 616-8470
email: adam.a.grogg@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 21, 2014, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Adam Grogg*
ADAM GROGG