IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCH FOR LIFE, *et al.*,

        Plaintiffs,

v.

SYLVIA M. BURWELL, in her official capacity as Secretary of the Department of Health and Human Services, *et al.*,

        Defendants.

No. 14-cv-1149

## DEFENDANTS' SUPPLEMENTAL BRIEF

In *Priests for Life v. U.S. Department of Health and Human Services*, the D.C. Circuit rejected constitutional and statutory challenges to the Affordable Care Act's contraceptive coverage requirement that were brought by religious nonprofits. -- F.3d --, 2014 WL 5904732 (D.C. Cir. 2014); *see also* Defs.' Mot. at 8-9 n.6, ECF No. 16 (citing *Mich. Catholic Conf. v. Burwell*, 755 F.3d 372 (6th Cir. 2014) (same); *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547 (7th Cir. 2014) (same)). Unlike the plaintiffs in those cases, March for Life, as an avowedly nonreligious nonprofit with nonreligious objections to contraceptives, has averred that it is not eligible for the religious accommodations available under the regulations. Compl. ¶ 91. And although the employee plaintiffs' objections to contraceptives are religious in nature, *id.* ¶¶ 27-34, the employee plaintiffs also are not eligible for the religious accommodations: the contraceptive coverage requirement does not apply to them, but rather applies to their employer, March for Life (to the extent March for Life chooses to offer health care coverage). In these respects this case differs from the vast majority of those—including *Priests for Life*—that have called upon courts to adjudicate the lawfulness of the contraceptive coverage requirement.

Nonetheless, the D.C. Circuit's decision undermines all of plaintiffs' claims.

**BACKGROUND**

The contraceptive coverage regulations provide that houses of worship and their integrated auxiliaries are exempt, 45 C.F.R. § 147.131(a) (exemption for "religious employers"), and that other religious nonprofits that self-certify that they satisfy certain criteria are eligible for religious accommodations, *id.* § 147.131(b) (religious accommodations for "eligible organizations"); *see* Defs.' Mot. at 5-9 & n.6 (describing the exemption for religious employers and the accommodations for eligible organizations). Eligible organizations that avail themselves of accommodations are "effectively exempt[]" from the contraceptive coverage requirement, but the regulations also "ensur[e] that [the organizations'] employees . . . have precisely the same access to all FDA-approved contraceptives as employees of" entities that "have no religious objections to providing such coverage." *Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 2759, 2763 (2014). In *Priests for Life*, the plaintiffs were all either religious employers or eligible organizations, 2014 WL 5904732, at *5-6, but they nonetheless argued that, notwithstanding the exemption and accommodations, the contraceptive coverage requirement violated the Free Exercise Clause and the Religious Freedom Restoration Act (RFRA), 42 U.S.C. §§ 2000bb *et seq.* The D.C. Circuit rejected both claims. *Priests for Life*, 2014 WL 5904732, at *31-33 (Free Exercise); *id.* at *9-31 (RFRA).

**ARGUMENT**

**1.** The Circuit's decision is dispositive of the employee plaintiffs' Free Exercise claim. The Free Exercise Clause "'does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.'" *Priests for Life*, 2014 WL 5904732, at *31 (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 879 (1990)). Just as the employee plaintiffs argue here, *see* Pls.' Mot. at 17-19, ECF No. 11, the *Priests for Life* plaintiffs argued that "the exemptions provided to houses of worship and grandfathered plans render the contraceptive coverage requirement non-neutral and not generally applicable." 2014 WL 5904732, at *31. The Circuit rejected this argument: "Those exemptions . . . do not impugn the contraceptive coverage

2

requirement's neutrality and generality: it is both, in the relevant sense of not selectively targeting religious conduct, whether facially or intentionally, and broadly applying across religious and nonreligious groups alike." *Id*. With regard to neutrality, the Circuit concluded that the contraceptive coverage requirement "is a religiously neutral part of a national effort to expand health coverage and make it more efficient and effective," and that its "limited or temporary exemptions do not amount to the kind of pattern of exemptions from a facially neutral law that demonstrate that the law was motivated by a discriminatory purpose." *Id.* at *32. As to general applicability, the Circuit held that the requirement "does not target religious organizations, but applies across the board," and that its "exemptions do not render the law so under-inclusive as to belie the government's interest[s]." *Id.*

Because "the contraceptive coverage requirement is a neutral law of general applicability," it "readily satisfy[ies] the . . . [F]ree [E]xercise standard," and the employee plaintiffs' claim to the contrary fails. *Id.* at *31, 33.

**2.** The Circuit also rejected the *Priests for Life* plaintiffs' RFRA challenge, concluding—as most relevant here—that the contraceptive coverage regulations are the least restrictive means of serving compelling governmental interests. 2014 WL 5904732, at *21-31. On the basis of the Circuit's holding that the regulations satisfy strict scrutiny, *id.*, this Court must reject the employee plaintiffs' RFRA claim even if the Court determines, contrary to defendants' arguments, that the regulations impose a substantial burden on them.[1]

The Circuit's decision confirms that providing the kind of individual exemptions that the employee plaintiffs seek would undermine the government's compelling interest in a workable insurance system that covers a wide range of preventive health services. As in *Priests for Life*,

---

[1] While the substantial burden alleged in *Priests for Life* differs from that alleged here, two principles upon which the Circuit relied are equally applicable in this case. First, *Priests for Life* confirms that it is the Court, not the employee plaintiffs, that decides whether an alleged burden is substantial. 2014 WL 5904732, at *12. Second, "[a]n asserted burden is . . . not an actionable substantial burden when it falls on a third party, not the religious adherent." *Id.* at *11. Defendants cited these principles in their prior briefing in this case, and they demonstrate that there is no substantial burden here. *See* Defs.' Mot. at 28-30; Defs.' Reply at 14-15, ECF No. 21.

"[t]he government's asserted compelling interest here . . . is in a sustainable system . . . under the [Affordable Care Act] to advance public health." *Id.* at \*22; *see, e.g.*, Defs.' Reply at 15.[2] The Circuit held that "[t]hat interest is as strong as those asserted in cases such as *United States v. Lee*, 455 U.S. 252, 258 (1982), and *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699-700 (1989), recognizing governmental interests in broad participation in public tax and benefits systems as sufficiently compelling to outweigh countervailing claims that they unjustifiably burdened religious exercise." *Priests for Life*, 2014 WL 5904732, at \*22. Moreover, the Circuit rejected the only argument that the employee plaintiffs raise against the government's interest in a functioning insurance system—that it cannot be compelling where the preventive services coverage regulations do not presently apply to *all* health plans, *see* Pls.' Reply at 26-27—holding that the "government's interest in a comprehensive, broadly available system is not undercut by the other exemptions in the" Affordable Care Act because the "government can have an interest in the uniform application of a law[] even if that law allows some exceptions," *Priests for Life*, 2014 WL 5904732, at \*30 (citing *Lee*, 455 U.S. at 261).

      Defendants have shown that granting the exemptions that the employee plaintiffs demand would harm the government's compelling interest. Defs.' Mot. at 30-36; Defs.' Reply at 15-17. In the Affordable Care Act, Congress established a system of mandatory coverage for recommended preventive services in all non-grandfathered health plans because, as in *Lee* and *Hernandez*, "broad participation" is necessary to "'maintain[] a sound . . . system.'" *Priests for Life*, 2014 WL 5904732, at \*22 (quoting *Hernandez*, 490 U.S. at 699-700; citing *Lee*, 455 U.S. at 258-59, and 78 Fed. Reg. at 39,872). The employee plaintiffs, by contrast, propose that *individual* plan participants and beneficiaries be permitted to opt out of coverage for particular

---

[2] Plaintiffs believe that the D.C. Circuit held in *Priests for Life* that "the government's interest [is] sufficient only insofar as . . . recipients [of contraceptive coverage under the regulations] likely 'want' and 'use' [contraceptives]," Pls.' Response at 2, but plaintiffs are incorrect. With regard to the employee plaintiffs' RFRA claim, it is the government's compelling interest in a functioning insurance system that would be jeopardized by exempting them. Defs.' Reply at 16 n.14. Nothing in the D.C. Circuit's discussion of that systemic interest indicates that it is contingent on whether individuals want or use contraceptive services.

services to which they object on religious grounds. But maintaining that system would be an impossible administrative undertaking. *Cf. id.* at *11 ("'Government simply could not operate if it were required to satisfy every citizen's religious needs and desires.'" (quoting *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 453 (1988))). More importantly, the employee plaintiffs' proposal is incompatible with group health coverage, which relies on common coverage for a set of insured individuals. Exempting the employee plaintiffs would therefore undermine governmental interests that the D.C. Circuit has concluded are compelling. *Id.* at *22.

Finally, with regard to RFRA's least restrictive means test, the Circuit has rejected all of the alternatives that the employee plaintiffs have proffered here; that alone is sufficient to defeat their RFRA claim. The employee plaintiffs have not contested that "the government need only 'refute the alternative schemes'" that they put forward, Defs.' Mot. at 36 (quoting *United States v. Wilgus*, 638 F.3d 1274, 1289 (10th Cir. 2011)); they argue that the government should create a new program to pay for contraceptives, subsidize the purchase of contraceptives through new tax credits, or expand national family planning programs. Pls.' Opp'n at 28-29.[3] The *Priests for Life* plaintiffs, likewise, proposed that "the government could offer tax deductions or credits for the purchase of contraceptive services, expand eligibility for existing federal programs that provide free contraception," or create a new program "allow[ing] women to submit receipts to the federal government for reimbursement." 2014 WL 5904732, at *29. The Circuit concluded that each of "[t]hose alternatives would substantially impair the government's interest." *Id.*; *see id.* (elaborating why for reasons defendants have explained, *see* Defs.' Mot. at 37). That conclusion

---

[3] The employee plaintiffs also propose that the government allow objecting employers to decline to provide all health care coverage and permit their employees to enroll in subsidized plans (that cover contraceptive services) on state exchanges. Pls.' Opp'n at 29. The Circuit addressed this possibility and concluded that it did not deserve consideration because the *Priests for Life* plaintiffs alleged "that declining to arrange health insurance benefits for their employees . . . would be inconsistent with their . . . mission and would deny them the recruitment and retention benefits of providing tax-advantaged health care coverage to their employees." 2014 WL 5904732, at *10 n.13. March for Life alleges the same. Compl. ¶ 24.

is binding on this Court, and in the face of it—and of the Circuit's holdings regarding the government's compelling interest—the employee plaintiffs cannot succeed on their RFRA claim.

**3.** The Circuit's decision also undermines March for Life's Equal Protection claim and all plaintiffs' Administrative Procedure Act (APA) claims. The crux of plaintiffs' theory is that defendants provided an exemption for religious employers "entirely on the express rationale that those entities' employees 'likely' share the entities' beliefs against contraception;" and that because March for Life's employees share its objection to contraception, March for Life must be exempted, too, even though it is not religious. Pls.' Mot. at 7; *see id.* at 9-10, 15, 18. Plaintiffs continued to insist that the government's purpose behind the religious employer exemption regarded the likely views of those employed by houses of worship, *see* Pls.' Reply at 2-4, even after defendants stated to the contrary: "as emphasized by the Departments throughout the rulemaking," "the exemption exists to 'respect[] the religious interests of houses of worship and their integrated auxiliaries,'" *see* Defs.' Mot. at 14 & n.10 (quoting 78 Fed. Reg. at 39,874, AR at 6). Plaintiffs have cited no authority for the novel proposition that, under rational basis review, a challenger can pronounce what purpose underlies a government policy. But to the extent that there ever was a dispute, there is not one now: the Circuit recognized that "the Departments categorically exempted 'religious employers[]'" "in order to 'respect[] the unique relationship between a house of worship and its employees.'" *Priests for Life*, 2014 WL 5904732, at *4 (quoting 76 Fed Reg. at 46,623).[4]

---

[4] The Circuit also noted that "the government reasonably assumed that if the church opposed contraception, the church's employees would, too." *Priests for Life*, 2014 WL 5904732, at *30 (citing 77 Fed. Reg. at 8,728). But the Circuit referenced this notion in explaining why the religious employer exemption does not undermine the government's compelling interests in providing cost-free contraceptives to women who want them, *id.*, and the Departments made the statement that the Circuit cites in the same context, *see* 77 Fed. Reg. at 8,728, AR at 215; *see also* 78 Fed. Reg. at 39,874, AR at 6 (same). The government also has an independent compelling interest in a functioning insurance system; that interest defeats the employee plaintiffs' RFRA claim. *See supra* pp. 3-5 & n.2. And neither of these issues—whether the government's interests are compelling and whether an organization's employees object to contraceptives—is relevant to plaintiffs' Equal Protection and APA claims, where rational basis review applies. Defs.' Mot. at 14 n.10, 18; Defs.' Reply at 11 & n.10, 22-23.

That the government's objective in providing an exemption for religious employers was to respect religious institutions' religious interests reasonably explains why the government crafted the exemption to encompass only religious entities, and not entities with secular objections like March for Life. *See id.* This objective was stated and restated by the Departments throughout the rulemaking. *See* Defs.' Mot. at 14 (quoting and citing 78 Fed. Reg. at 39,874, AR at 6; 78 Fed. Reg. at 8,461, AR at 170; 76 Fed. Reg. at 46,623, AR at 220). The APA requires no more. *See* Defs.' Reply at 22-24.

During the discussion of plaintiffs' APA claims at oral argument, the Court inquired whether the Department of Health and Human Services (HHS) had researched the number of secular, U.S.-based, anti-contraception nonprofits that only hire employees who themselves oppose contraception, and asked where in the rulemaking those particular nonprofits are addressed. *See* 11/6/14 Oral Arg. Tr. at 32-37, 42-46. While the Departments did consider comments suggesting that the exemption include secular objectors in general, *see* Defs.' Reply at 23 (citing 78 Fed. Reg. at 8,459-60, AR at 168-69; *id.* at 39,873-74, AR at 5-6), it is appropriate that HHS had not conducted the more specific research about which the Court inquired, and the rulemaking as it stands accords with the APA, for at least three reasons.

*First*, the APA's deferential standard of review simply does not require a federal agency to justify its policy with regard to every particular entity to which it potentially applies. It is not the obligation of a government agency to survey all entities potentially subject to a national policy to determine the specific effects on each of them. Nor would it be appropriate, in this context, for a government agency to inquire about the beliefs of individual employees at specific nonprofits. Rather, under the APA, agencies have discretion to make line-drawing decisions, especially those regarding the scope of a requirement's applicability and the categories of entities exempted. *See* Defs.' Reply at 2, 22-23 (citing *Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983); *Nat'l Shooting Sports Found. v. Jones*, 716 F.3d 200, 214 (D.C. Cir. 2013); *WorldCom, Inc. v. FCC*, 238 F.3d 449, 462 (D.C. Cir. 2001)). Agencies must only "articulate a rational connection between the facts found and the choice made," *Bowman*

7

*Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974) (quotation omitted), as to the overall program and any significant exemptions provided. Defendants have done so.

In first authorizing an exemption for religious employers, the Departments stated that their purpose was "to provide for a religious accommodation that respects the unique relationship between a house of worship and its employees," and "to reasonably balance the extension of" contraceptive coverage "to as many women as possible, while respecting" that relationship. 76 Fed. Reg. at 46,623, AR at 220; *see also id.* (noting that many state laws requiring contraceptive coverage provide "religious accommodation[s]"). Later in the rulemaking, as the exemption and accommodations took shape, the Departments stated that they were mindful of RFRA—which protects *religious* freedom—in drawing the lines that they did. 77 Fed. Reg. at 8,727, 8,279, AR at 214, 216; 78 Fed. Reg. at 8,459, AR at 168; *id.* at 39,886-88, AR at 18-20. Finally, in the preamble to the 2013 final rules, after restating the compelling interests that the contraceptive coverage requirement advances, 78 Fed. Reg. at 39,872-73, AR at 4-5, the agencies explained that the exemption for religious employers "respect[s] the religious interests of houses of worship and their integrated auxiliaries in a way that does not undermine the governmental interests furthered by the" requirement, *id.* at 39,874, AR at 6. The government has therefore articulated why the requirement applies broadly to non-religious employers, including those like March for Life, and why certain religious employers are exempt. Here, "the agenc[ies'] path may reasonably be discerned," and this Court must uphold the contraceptive coverage regulations against plaintiffs' APA challenge. *Bowman Transp., Inc.*, 419 U.S. at 286.

*Second*, while religious exemptions are commonplace, plaintiffs have not pointed to any precedent for exempting from a generally applicable law secular employers that only hire likeminded employees. Those with moral, ethical, political, financial, and other non-religious objections to a government policy are of course free to advocate against that policy, but neither the Constitution nor any other federal law requires that exemptions be crafted for them. Religious objections, on the other hand, are different. The First Amendment "gives special solicitude to the rights of *religious* organizations," *Hosanna-Tabor Evangelical Lutheran Church*

8

*& School v. EEOC*, 132 S. Ct. 694, 706 (2012) (emphasis added), and "*religious* employers have long enjoyed advantages . . . over other entities," *Univ. of Notre Dame*, 743 F.3d at 560 (emphasis added); *see* Defs.' Mot. at 15 & n.11 ("'our history is pervaded by . . . evidence of accommodation of all *faiths* and all forms of *religious* expression'" (emphasis added) (quoting *Lynch v. Donnelley*, 465 U.S. 668, 678 (1984))). Indeed, plaintiffs' logic—that, by law, exemptions for religious employers must be extended to non-religious employers that maintain similar (albeit secular) beliefs—would call the legality of such advantages, and the constitutionality of laws like the *Religious* Freedom Restoration Act (upon which plaintiffs otherwise rely), into question.

*Third*, plaintiffs have not identified any comments that were presented to the Departments during the rulemaking and that raise the claims of secular anti-contraception nonprofits that only hire likeminded employees. While plaintiffs have identified comments regarding secular anti-contraception nonprofits in general, they have not identified comments regarding any such groups that only hire those with similar beliefs.[5] The latter organizations were of primary concern to the Court. *See* 11/6/14 Oral Arg. Tr. at 35, 42-46. Because issues pertaining to these organizations were not presented to the Departments during the rulemaking, plaintiffs cannot make claims pertaining to these organizations now: "It is black-letter administrative law that '[a]bsent special circumstances, a party must initially present its comments to the agency during the rulemaking in order for the court to consider the issue,'" and "'[a]n objection must be made with sufficient specificity reasonably to alert the agency.'" *Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) (quoting *Tex Tin Corp. v. EPA,* 935 F.2d 1321, 1323 (D.C. Cir. 1991)).

---

[5] In one of the comments that plaintiffs have identified, the nonprofit Americans United for Life describes itself, seemingly like March for Life, as a "pro-life organization" that "is not . . . religiously affiliated," but—crucially—makes no representations about the beliefs of its employees. Americans United for Life Comment on CMS-9968-P at 6 (Apr. 8, 2013), *available at* http://www.regulations.gov/#!documentDetail;D=CMS-2012-0031-79115.

9

Nonetheless, if the Court were to conclude—contrary to defendants' arguments—that the Departments have not supplied a reasoned basis for their decision to limit the exemption for religious employers to religious entities, the proper remedy would be remand without vacatur. In reviewing agency action under the APA, the Court "ha[s] no jurisdiction to order specific relief" like an injunction. *Palisades Gen. Hosp., Inc. v. Leavitt*, 426 F.3d 400, 403 (D.C. Cir. 2005). Instead, "'under settled principles of administrative law, when a court . . . determines that an agency made an error . . ., the court's inquiry is at an end: the case must be remanded to the agency for further action' . . . consistent with its opinion." *Id.* (some internal quotation marks omitted) (quoting *Cnty. of L.A. v. Shalala*, 192 F.3d 1005, 1011 (D.C. Cir. 1999)); *see, e.g.*, *INS v. Ventura*, 537 U.S. 12, 16 (2002) (In reviewing an APA claim, a court "'is not generally empowered to conduct a *de novo* inquiry . . . and to reach its own conclusions based on such an inquiry.' . . . Rather, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985))). And where the error identified by a reviewing court is a lack of reasoned explanation under the APA, remand without vacatur is required "[b]ecause it is 'plausible' that [the agency] 'can redress [its] failure of explanation on remand.'" *Lilliputian Sys., Inc. v. Pipeline & Hazardous Materials Safety Admin.*, 741 F.3d 1309, 1314 (D.C. Cir. 2014) (quoting *Black Oak Energy, LLC v. FERC*, 725 F.3d 230, 244 (D.C. Cir. 2013)); *see, e.g.*, *Fox Television Stations, Inc. v. FCC*, 280 F.3d 1027, 1047 (D.C. Cir. 2002) ("Under the APA reviewing courts generally limit themselves to remanding for further consideration an agency order wanting an explanation adequate to sustain it."). Accordingly, even if plaintiffs' APA claims had merit—which they do not—a remand to the Departments, without vacatur, would be the only appropriate remedy.

## CONCLUSION

Defendants respectfully request that the Court grant defendants' motion to dismiss or, in the alternative, for summary judgment, and deny plaintiffs' motion for preliminary injunction and final judgment on the merits.

Dated:  December 10, 2014 Respectfully Submitted,

JOYCE R. BRANDA
Acting Assistant Attorney General

RONALD C. MACHEN, JR.
United States Attorney

JENNIFER RICKETTS
Director

SHEILA M. LIEBER
Deputy Director

/s/ *Adam Grogg*
ADAM GROGG (N.Y. Bar)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave. NW
Washington, DC  20001
phone: (202) 514-2395
fax: (202) 616-8470
email: adam.a.grogg@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2014, I electronically filed a copy of the foregoing. Notice of this filing will be sent via email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.

/s/ *Adam Grogg*
ADAM GROGG